IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD FLEMING,<br>       Plaintiff | )<br>)   C.A. No. 02-164 Erie<br>) |
| v. | )<br>) |
| SUPERINTENDENT WOLFE, et al.,<br>       Defendants. | )<br>)<br>) |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff Ronald Fleming, a former inmate at the State Correctional Institutions at Albion and Camp Hill, Pennsylvania, brings this civil rights action to trial against the following named Defendants: Captain T. Weaver, a corrections officer at SCI-Albion ("Weaver"); Captain T.W. Robinson, a corrections officer at SCI-Albion ("Robinson"); Mr. Tiller, a corrections officer at SCI-Albion ("Tiller); Mr. Sullivan, a corrections officer at SCI-Albion ("Sullivan"); Mr. Davison, a corrections officer at SCI-Albion ("Davison"); Mr. Maldonado, a corrections officer at SCI-Albion ("Maldonado"); Sergeant Kreider, a corrections officer at SCI-Camp Hill ("Kreider"); P.F. Allen, a corrections officer at SCI-Camp Hill ("Allen"); and Mr. Wittel, a corrections officer at SCI-Camp Hill ("Wittel").[1] Plaintiff claims that Defendants Tiller, Sullivan and Davison used excessive force against him in violation of his Eighth Amendment rights, and that the remaining Defendants filed a number of allegedly "frivolous" misconducts against him in retaliation for the exercise of his First Amendment rights to freedom of speech and/or to petition for redress of grievances. Jurisdiction is pursuant to 28 U.S.C. § 1331, the written consent of the parties pursuant to 28 U.S.C. § 636 (c), and Federal Rule of Civil

---

[1] Plaintiff's claims against Defendants Superintendent Wolfe, Deputy Superintendent Marquardt, Hearing Examiner Barnett, Unit Manager Skendall, Grievance Coordinator Barr, Business Manager McCarthy, Deputy Superintendent Kormanic, Program and Classification Manager Boey, Lt. Morrow, Lt. Jones, Sgt. Edday, Lt. Franz, Superintendent Kelchner, Mgr. Kazor, Mgr. Ditty, Major Petruccio, Major Garrett, Mgr. Steigerwait, Grievance Coordinator Taggart, Hearing Examiner Baker, Hearing Examiner Andreade, and Lt, Leggore, were previously dismissed from this case by Order of District Judge Sean J. McLaughlin, dated May 19, 2005. [Document # 147].

Procedure 73. A non-jury trial was held on October 18, 2005. The following constitutes the findings of fact and conclusions of law required by Rule 52(a) of the Federal Rules of Civil Procedure.

## I.  FINDINGS OF FACT

### A.  Excessive Use of Force Claim v. Defendants Tiller and Sullivan

1.  On May 15, 2002, while Plaintiff was incarcerated at SCI-Albion, he filed a grievance against Defendants Tiller and Sullivan, claiming that Defendant Tiller kicked him hard in his right ankle and that Defendant Sullivan slammed a "wicker" shut on his right wrist when he was escorted to the law library on May 14, 2002. On initial review of Plaintiff's grievance, Defendant Weaver found no evidence supporting Plaintiff's claims and the grievance was found to have no merit. (Document # 17, Supplemental Complaint, at ¶¶ 16-17).

2.  At trial, Plaintiff testified that a videotape of the alleged kicking incident would show Defendant Tiller's foot coming into contact with his ankle. (Document # 179, Trial Transcript, at p. 14 ). The videotape was reviewed in open court, and it did not show evidence of Defendant Tiller's foot coming into contact with Plaintiff's ankle while Plaintiff was being escorted to the law library on May 14, 2002. (Videotape identified as Defendants' Trial Exhibit A and Plaintiff's Trial Exhibit 10).

3.  In his report detailing his investigation of the kicking incident, Defendant Weaver noted that "[i]t would have been extremely difficult if not impossible for [Officer Tiller] to have kicked/tripped Fleming without it being very obvious on the video," because the video showed Defendant Tiller being several feet behind Plaintiff during the escort to the law library. (Weaver's investigation report attached as part of Defendants' Trial Exhibit E, at p. 9). The videotape showed that Defendant Tiller was, in fact, several feet behind Plaintiff during the escort. (Videotape identified as Defendants' Trial Exhibit A and Plaintiff's Trial Exhibit 10).

4.  Defendant Tiller testified at trial that Plaintiff's accusation that he kicked Plaintiff in the right ankle was "false." (Document # 179, Trial Transcript, at p. 53).

5.  Defendant Sullivan was operating the video camera during Plaintiff's escort to

2

the law library on May 14, 2002, and did not see Defendant Tiller kick Plaintiff in the ankle during the escort. (Document # 179, Trial Transcript, at pp. 70, 80).

  6. David John Eddy, Lieutenant for the Pennsylvania Department of Corrections at SCI-Albion, had watched Plaintiff being escorted to the law library on May 14, 2002, and testified that Plaintiff "tripped [him]self up." Immediately after Lieutenant Eddy observed the incident, he was asked by Plaintiff "do you see what your officers done?" to which he responded "the only thing I seen was you tripped yourself up and if you keep it up, you'll go back to your cell." (Document # 179, Trial Transcript, at pp. 86-87).

  7. With regard to Plaintiff's claim that his wrist was slammed in the law library wicker, Plaintiff informed Defendant Weaver during his investigation of the alleged incident that, after he put his hands through the wicker and his handcuffs were removed, Defendant "Sullivan slammed [his] hand in the wicker and held it there like ten seconds." However, all staff members interviewed by Defendant Weaver during his investigation "den[ied] that Officer Sullivan slammed the wicker door on inmate Fleming's arm." (Weaver's investigation report attached as part of Defendants' Trial Exhibit E, at pp. 7-8).

  8. There is no videotape available to support Plaintiff's claim because Defendant Sullivan shut off the camera once Plaintiff had entered the law library, before the alleged incident occurred. (Document # 179, Trial Transcript, at pp. 71-72, 77).

  9. On May 14, 2002, the same day as the alleged incident, Plaintiff was examined by Donald Klos, a registered nurse employed at SCI-Albion, regarding the injuries he claimed to have suffered on his way to the law library. As part of the examination, Mr. Klos completed a medical incident/injury report, in which no injuries to Plaintiff's wrist or ankle were noted. (Medical Incident/Injury Report attached as part of Defendants' Trial Exhibit E; Document # 179, Trial Transcript, at p. 106). Mr. Klos's examination revealed that "[t]here was no bleeding, bruising, lacerations, no abrasions, no swelling, no redness. Other than [Plaintiff's] subjective response to pain, there was nothing to indicate that, that [Plaintiff was] injured." (Document # 179, Trial Transcript, at pp. 112).

  10. On May 15, 2002, Plaintiff had his right wrist and right ankle re-examined by

Daniel S. Telega, a physician's assistant at SCI-Albion. Mr. Telega's examination, and subsequent x-rays, revealed "[n]o significant findings," and Plaintiff's subjective complaints were inconsistent with the physical findings. (Document # 179, Trial Transcript, at pp. 122, 126, 128).

### B.     Retaliation Claims v. SCI-Albion Defendants

11.     This *pro se* civil rights action was initiated by Plaintiff on May 22, 2002.

12.     On May 20, 2002, Plaintiff was given a misconduct by Defendant Weaver for lying to an employee, stemming from his grievance against Defendants Tiller and Sullivan for the alleged injuries he suffered on the way to the law library on May 14, 2002. Plaintiff was found guilty of the misconduct and sanctioned to fifteen (15) days of disciplinary custody. (Document # 179, Trial Transcript, at p. 6; Plaintiff's Trial Exhibit 1).

13.     On August 2, 2002, Plaintiff received a misconduct from Defendants Davison and Maldonado for destroying, altering, tampering with, or damaging property, when he was accused of breaking a cuff key. Plaintiff was found guilty of this misconduct and sanctioned to thirty (30) days of disciplinary custody. (Document # 179, Trial Transcript, at p. 7; Plaintiff's Trial Exhibit 3).

14.     On August 23, 2002, Plaintiff received a misconduct for assault and refusing to obey an order after an incident that occurred while he was being escorted outside to the yard by Defendants Davison and Maldonado. According to the misconduct, Plaintiff kicked the yard gate, causing it to hit Defendant Davison's hand, and he refused Defendant Davison's order to return a spit shield that Plaintiff was required to wear. Plaintiff was placed on cell restriction for eight (8) days and was later found guilty of the misconduct, for which he was sanctioned to one hundred thirty-five (135) days of disciplinary custody. (Document # 179, Trial Transcript, at p. 7; Plaintiff's Trial Exhibit 4).

15.     On August 31, 2002, Plaintiff received a misconduct from Defendant Robinson for lying to an employee, stemming from abuse allegations Plaintiff raised against Defendant Davison, which were found to be unsubstantiated. Plaintiff was found guilty of this

4

misconduct and sanctioned to forty-five (45) days of disciplinary custody. (Document # 179, Trial Transcript, at p. 8; Plaintiff's Trial Exhibit 5).

16. Plaintiff claims that each of the foregoing misconducts were received in retaliation for his initiation of this lawsuit against the Defendants. (Document # 179, Trial Transcript, at pp. 6-8).

17. Defendant Weaver issued Plaintiff a misconduct on May 20, 2002, for lying to an employee, based on his investigation of Plaintiff's grievance against Defendants Tiller and Sullivan, which resulted in his finding that "[t]here is no evidence to support any of the claims made by inmate Fleming. It appears that he has blatantly lied about all issues." (Document # 179, Trial Transcript, at pp. 38, 40; Weaver's Investigation Report attached to Defendants' Trial Exhibit E, at p. 9).

18. At the time Defendant Weaver issued the misconduct against Plaintiff on May 20, 2002, he "had no knowledge" that Plaintiff had filed or was preparing the present lawsuit. (Document # 179, Trial Transcript, at pp. 40-41).

19. Defendant Weaver was not one of the Defendants named in Plaintiff's original Complaint that was filed with this Court on May 22, 2002. (Document # 3, Complaint).

20. On August 2, 2002, while Defendants Maldonado and Davison attempted to remove Plaintiff's handcuffs in his cell, Plaintiff tried to pull on the handcuffs, causing Defendant Maldonado's cuff key to break. (Document # 179, Trial Transcript, at pp. 94-95, 99). As a result, Defendant Davison issued a misconduct against Plaintiff for destroying, altering, tampering with, or damaging property. (Plaintiff's Trial Exhibit 3).

21. On August 23, 2002, Defendant Maldonado videotaped Plaintiff being escorted to the yard by Defendant Davison and another correctional officer when Plaintiff pulled the tether out of Defendant Davison's hands, turned around, and kicked the yard gate, causing the gate to hit Defendant Davison in the hand. (Document # 179, Trial Transcript, at pp. 96-97). As a result, Plaintiff received a misconduct for assault and refusing to obey an order. (Plaintiff's Trial Exhibit 4).

22. Defendant Maldonado was not aware that Plaintiff had filed the present lawsuit

when the foregoing misconducts were issued on August 2, 2002, and August 23, 2002. (Document # 179, Trial Transcript, at pp. 97-98).

23.     Defendants Maldonado and Davison were not named as Defendants in Plaintiff's original Complaint filed with this Court on May 22, 2002. (Document # 3, Complaint).

24.     On August 31, 2002, Defendant Robinson issued a misconduct against Plaintiff for lying to an employee, based upon his investigation of a grievance Plaintiff filed against Defendant Davison for allegedly closing the yard gate on Plaintiff's elbow, which resulted in Defendant Robinson's finding that Plaintiff "clearly knew he had kicked the gate and that an officer had not assaulted him." (Document # 179, Trial Transcript, at p. 100; Plaintiff's Trial Exhibit 5).

25.     Defendant Robinson was not named as a Defendant in Plaintiff's original Complaint filed with this Court on May 22, 2002. (Document # 3, Complaint).

### C.     Excessive Use of Force Claim v. Defendant Davison

26.     On or about August 23, 2002, Plaintiff filed a grievance against Defendant Davison claiming that Defendant Davison assaulted him by "yanking on the yard gate causing it to hit [Plaintiff] in the right elbow very hard before it being secured into the yard." Plaintiff claims this incident occurred immediately before Plaintiff kicked the yard gate, causing it to strike Defendant Davison's hand. (Document # 179, Trial Transcript, at p. 7; Plaintiff's Trial Exhibit 4 at p. 2).

27.     The surveillance videotape of Defendant Davison's escort of Plaintiff to the yard on August 23, 2002, was presented at trial. (Defendants' Trial Exhibit B; Plaintiff's Trial Exhibit 11). Upon review of the videotape, there was no evidence of Defendant Davison closing the yard gate on Plaintiff's right elbow; however, the videotape clearly depicted Plaintiff kicking the yard gate toward Defendant Davison. (Document # 179, Trial Transcript, at pp. 100-103).

28.     No medical records or testimony were offered by Plaintiff at trial to demonstrate that he suffered an injury to his right elbow as a result of the incident he claims to have occurred

on August 23, 2002.

### D. Retaliation Claims v. SCI-Camp Hill Defendants

29. Plaintiff was transferred to SCI-Greene on September 11, 2002, and was subsequently transferred to SCI-Camp Hill on May 29, 2003. (Document # 59, Supplemental Complaint, at ¶ 1).

30. On August 2, 2003, Plaintiff prepared a sworn affidavit on behalf of another inmate, Tyrone Colbert, stating that he witnessed Colbert being assaulted by Defendants Allen, Wittel, and Kreider during a cell search. (Document # 179, Trial Transcript, at p. 9; Plaintiff's Trial Exhibit 6).

31. On August 11, 2003, Defendant Wittel discovered Plaintiff sitting on a desk and banging on his cell window with a closed fist, while yelling outside.  Despite being given three separate orders to stop banging on the window, Plaintiff refused to stop and shouted obscenities at Defendant Wittel. (Document # 179, Trial Transcript, at p. 162; Plaintiff's Trial Exhibit 7).  As a result, Defendant Wittel issued a misconduct against Plaintiff for refusing to obey an order and using abusive language to an employee.  Defendants Allen and Kreider were named as witnesses in support of the misconduct. (Plaintiff's Trial Exhibit 7).

32. Plaintiff claims that the misconduct he received on August 11, 2003, was in retaliation for his sworn affidavit of August 2, 2003. (Document # 59, Supplemental Complaint, at ¶ 32).

33. Neither Defendant Kreider nor Defendant Wittel had seen or been made aware of the existence of Plaintiff's sworn affidavit on or before August 11, 2003. (Document # 179, Trial Transcript, at pp. 148, 167).

34. Defendant Allen was not aware of the existence of Plaintiff's sworn affidavit at any time prior to his being served to appear at the trial of this matter. (Document # 179, Trial Transcript, at p. 157).

## II.    CONCLUSIONS OF LAW

### A.    Retaliation

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990).  "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).

This Court previously determined that Plaintiff has established prima facie claims of retaliation against Defendants Weaver, Davison, Maldonado, Robinson, Allen, Wittel, and Kreider. (Document # 145, Report and Recommendation dated April 19, 2005).  The burden has, thus, shifted to the Defendants to demonstrate at trial, by a preponderance of the evidence, that they would have taken the same adverse actions (i.e., filed the challenged misconducts) regardless of Plaintiff's exercise of his constitutionally protected rights.  Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002).  See also Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001) ("[o]nce a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest").  In evaluating a prison official's opinion, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979).

### 1.    SCI-Albion Defendants

Plaintiff claims that the misconducts he received from Defendants Weaver, Davison, Maldonado, and Robinson were all in retaliation for his filing of the present lawsuit on May 22, 2002.  At trial, however, Defendants Weaver and Maldonado testified that they were not aware of the existence of this action, or Plaintiff's contemplation of this action, at the time they issued

8

their respective misconducts. (Document # 179, Trial Transcript, at pp. 40-41, 97-98). The Court finds this testimony credible, given the fact that neither Defendant Weaver nor Defendant Maldonado was named as a Defendant in Plaintiff's original Complaint and, thus, would not have been served with a copy of the Complaint prior to issuing the misconducts at issue. Similarly, neither Defendant Davison nor Defendant Robinson was named as a Defendant in Plaintiff's original Complaint and, thus, would not have had actual notice of this action. This lack of knowledge regarding the existence of this lawsuit, alone, is fatal to Plaintiff's retaliation claims, as the Defendants could not have filed their misconducts in retaliation for an unknown act. Moreover, the SCI-Albion Defendants provided ample testimony and evidence at trial to meet their burden of proving that each of the challenged misconducts was issued for reasons reasonably related to a legitimate penological interest.

### a.     May 20, 2002 Misconduct

Defendant Weaver testified that he issued Plaintiff a misconduct on May 20, 2002, for lying to an employee, after his investigation of Plaintiff's grievance against Defendants Tiller and Sullivan elicited a finding that "[t]here is no evidence to support any of the claims made by inmate Fleming. It appears that he has blatantly lied about all issues." (Document # 179, Trial Transcript, at pp. 38, 40; Weaver's Investigation Report attached to Defendants' Trial Exhibit E, at p. 9). This conclusion was buttressed by the testimony of Lieutenant Eddy, who had watched Plaintiff being escorted to the law library on May 14, 2002, and observed only that Plaintiff "tripped [him]self up." (Document # 179, Trial Transcript, at pp. 86-87). The videotape of Plaintiff's escort to the law library on May 14, 2002, strongly favors Lieutenant Eddy's version of the alleged tripping incident and serves as persuasive evidence that Plaintiff fabricated his claim that Defendant Tiller kicked him in the ankle. With regard to Plaintiff's grievance against Defendant Sullivan, all staff involved denied that Defendant Sullivan slammed the wicker door on Plaintiff's wrist. (Document # 179, Trial Transcript, at pp. 31, 53, 73, 81-82). Furthermore, there is no medical evidence of record that would even suggest that Plaintiff suffered an injury to either his right ankle or right wrist on May 20, 2002, as claimed by Plaintiff. Thus,

Defendant Weaver's conclusion that Plaintiff contrived his grievance against Defendants Tiller and Sullivan is amply supported by the evidence presented at trial and, therefore, Defendant Weaver has met his burden of proving that the May 20, 2002 misconduct against Plaintiff for lying to an employee was issued for reasons reasonably related to a legitimate penological interest.

### b.   August 2, 2002 Misconduct

Defendant Maldonado testified at trial that his handcuff key was broken by Plaintiff on August 2, 2002, when Plaintiff attempted to pull away as his handcuffs were being removed. (Document # 179, Trial Transcript, at pp. 94-95). This testimony was uncontradicted by Plaintiff. Thus, Defendants have met their burden of proving that the misconduct against Plaintiff for destroying, altering, tampering with, or damaging property, was issued for reasons reasonably related to a legitimate penological interest.

### c.   August 31, 2002 Misconduct

The misconduct against Plaintiff issued on August 31, 2002, for lying to an employee, arose from Defendant Robinson's investigation of Plaintiff's grievance against Defendant Davison for allegedly assaulting him with a yard gate. In support of the misconduct, Defendant Robinson stated that, "it was discovered by observing a videotape of the said incident that inmate Fleming knowingly lied in his grievance." (Document # 179, Trial Transcript, at p. 100; Plaintiff's Trial Exhibit 5). Upon review of the videotape, this Court saw no evidence of Defendant Davison closing the yard gate on Plaintiff's right elbow; however, the videotape clearly depicted Plaintiff kicking the yard gate toward Defendant Davison. (Document # 179, Trial Transcript, at p. 100-103). Thus, this Court is in agreement with Defendant Robinson's investigative findings. Furthermore, no medical records or testimony were offered by Plaintiff at trial to demonstrate that he suffered an injury to his right elbow as a result of the incident he claims to have occurred. As a result, this Court concludes that Defendant Robinson has met his burden of proving that his misconduct against Plaintiff for lying to an employee was

issued for reasons reasonably related to a legitimate penological interest.

### d. August 11, 2003 Misconduct

At trial, Defendant Wittel testified that, on August 11, 2003, he discovered Plaintiff sitting on a desk and banging on his cell window with a closed fist. Defendant Wittel testified further that, despite giving Plaintiff three separate orders to stop banging on the window, Plaintiff refused to stop and shouted obscenities at him. (Document # 179, Trial Transcript, at p. 162). As a result, he issued a misconduct against Plaintiff for refusing to obey an order and using abusive language to an employee. (Plaintiff's Trial Exhibit 7). This testimony was uncontradicted by Plaintiff. Thus, Defendant Wittel has met his burden of proving that his misconduct against Plaintiff on August 11, 2003, was issued for reasons reasonably related to a legitimate penological interest.

### B. Excessive Use of Force

"In order for a prisoner to state an Eighth Amendment claim for the excessive use of force by a prison official, he must establish that the force was not applied in a good-faith effort to maintain or restore discipline, but that it was maliciously and sadistically used to cause harm." Wilson v. Shannon, 982 F.Supp. 337, 340 (E.D.Pa. 1997), citing Hudson v. McMillian, 503 U.S. 1, 7 (1992). Under Hudson, the absence of a serious injury to the inmate is relevant to this Court's inquiry, but does not end it. Hudson, 503 U.S. at 7. However, *de minimis* uses of physical force are excluded from constitutional recognition, provided that the use of force is not "'repugnant to the conscience of mankind.'" Whitley v. Albers, 475 U.S. 312, 327 (1986), quoting, Estelle v. Gamble, 429 U.S. 97, 106 (1976).

### 1. Defendants Tiller and Sullivan

Plaintiff has failed to present any credible evidence to support his claims against Defendants Tiller and Sullivan for excessive use of force. Although Plaintiff offered his own testimony that Defendant Tiller kicked him in the right ankle and Defendant Sullivan slammed

11

his right wrist in the law library wicker, the Court cannot accept such testimony as credible in light of the contrary testimony and evidence of record.

With regard to the alleged kicking incident, a videotape of Plaintiff's escort to the law library on May 14, 2002, failed to show Defendant Tiller's foot coming into contact with Plaintiff's ankle, as Plaintiff claimed it would. (Videotape identified as Defendants' Trial Exhibit A and Plaintiff's Trial Exhibit 10). Defendant Sullivan, who operated the video camera during Plaintiff's escort to the law library, testified that he didn't see Defendant Tiller kick Plaintiff in the ankle during the escort. (Document # 179, Trial Transcript, at pp. 70, 80). Defendant Weaver's investigation report confirmed that "[i]t would have been extremely difficult if not impossible for [Officer Tiller] to have kicked/tripped Fleming without it being very obvious on the video," because the video showed Defendant Tiller being several feet behind Plaintiff during the escort to the law library. (Weaver's investigation report attached as part of Defendants' Trial Exhibit E, at p. 9). Lieutenant Eddy's testimony was even more demonstrative, indicating that Plaintiff "tripped [him]self up." (Document # 179, Trial Transcript, at p. 86).

With regard to Plaintiff's claim that his wrist was slammed in the law library wicker, there is no videotape available to support Plaintiff's claim because Defendant Sullivan shut off the camera once Plaintiff had entered the law library, before the alleged incident occurred. (Document # 179, Trial Transcript, at pp. 71-72, 77). Nevertheless, Defendant Weaver's investigation report indicated that all staff members interviewed during his investigation "den[ied] that Officer Sullivan slammed the wicker door on inmate Fleming's arm." (Weaver's investigation report attached as part of Defendants' Trial Exhibit E, at pp. 7-8).

Furthermore, Nurse Klos, who examined Plaintiff's right wrist and right ankle on the date of the alleged incidents, testified that his examination revealed that "[t]here was no bleeding, bruising, lacerations, no abrasions, no swelling, no redness. Other than [Plaintiff's] subjective response to pain, there was nothing to indicate that, that [Plaintiff was] injured." (Document # 179, Trial Transcript, at pp. 112). This testimony was echoed by Physician Assistant Telega, who testified that his examination and x-rays of Plaintiff's right ankle and

12

right wrist on May 15, 2002, revealed "[n]o significant findings," and that Plaintiff's subjective complaints were inconsistent with the physical findings. (Document # 179, Trial Transcript, at pp. 122, 126, 128).

In short, Plaintiff has not only failed to prove that he was subjected to an excessive use of force, he has failed to show that he was the victim of any force whatsoever. In fact, the overwhelming weight of evidence indicates that Plaintiff's claims were fabricated and, thus, have no merit.

### 2.     **Defendant Davison**

Plaintiff has claimed that, on or about August 23, 2002, Defendant Davison assaulted him by "yanking on the yard gate causing it to hit [Plaintiff] in the right elbow very hard before it being secured into the yard." (Document # 179, Trial Transcript, at p. 7; Plaintiff's Trial Exhibit 4 at p. 2). Defendant Maldonado, who videotaped Defendant Davison's escort of Plaintiff to the yard on August 23, 2002, testified at trial that, after Defendant Davison and another officer opened the yard gate for Plaintiff, Plaintiff "pulled the tether out of Davison's hands, turned around and kicked the gate." (Document # 179, Trial Transcript, at pp. 96-97). This testimony was confirmed by the videotape of the incident presented at trial, which clearly depicted Plaintiff kicking the yard gate toward Defendant Davison and showed no evidence of Defendant Davison closing the yard gate on Plaintiff's right elbow, as Plaintiff claims to have occurred immediately prior to him kicking the gate.. (Defendant's Trial Exhibit B; Plaintiff's Trial Exhibit 11). Furthermore, Plaintiff failed to offer any medical records or testimony at trial to demonstrate that he suffered an injury to his right elbow as a result of the incident he claims to have occurred on August 23, 2002. Thus, Plaintiff has failed to present any credible evidence to substantiate his claim that Defendant Davison assaulted or used any force against him, whatsoever, on August 23, 2002.

Accordingly, this 10th day of January, 2006, it is hereby

ORDERED that judgment be entered in favor of Defendants and against Plaintiff, and the case be closed.

S/Susan Paradise Baxter<br>
SUSAN PARADISE BAXTER<br>
Chief U.S. Magistrate Judge